WILLIAM B. GRIFFIN, Appellant, *v.* J. HYLER WHITE, as Survivor, etc., Respondent.

Plaintiff, being the owner of a patented device, to be used in the manufacture of wagons, entered into an agreement with the firm of J. & W., of which firm defendant is the surviving partner, by which he granted to that firm the right to use the device upon all wagons made by it, and to grant licenses to others to use it, the firm to pay him one dollar and twenty-five cents for each wagon made and sold, and one-fourth of the amount received for licenses granted. Some time after the execution of the contract said firm began the manufacture of " gears," in the first place for the purpose of advertising its wagons. These gears were gradually introduced to the trade, and sold by the firm to dealers as a separate article; each cost about $8 and were sold for $9; the wagons were sold at prices ranging from $100 to $200. In an action upon the contract

plaintiff claimed that the gears were to be treated as wagons, and that he was entitled to the agreed royalty for each one sold. *Held,* untenable; also that the manufacture and sale of the gears was not included in the right to grant licenses, and so plaintiff was not entitled to one-fourth of the receipts ; but that such a use of the patented article was not provided for or granted by the contract, and as plaintiff had consented to the use he could not claim an infringement of his patent, but was simply entitled to recover the reasonable value of such use.

(Argued April 25, 1894; decided June 5, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made at the November term, 1892, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit without a jury.

This was an action upon a contract made between plaintiff and the firm of Joubert & White of which firm defendant is the surviving partner.

The provisions of the contract and the facts, so far as material, are stated in the opinion.

*Esek Cowen* for appellant. The construction of the contract claimed by defendant would make it unreasonable. (*Russell* v. *Allerton,* 108 N. Y. 288.) If a party sells a part of an invention with intent that the purchasers shall supply the remainder, such sale is an infringement. (*Travers* v. *Beyer,* 23 Blatchf. 424; *Wallace* v. *Holmes,* 9 id. 65.) In the construction of a contract the court may look to antecedents and surrounding facts and circumstances to ascertain its meaning. (*Blossom* v. *Griffin,* 13 N. Y. 569; *Griffiths* v. *Hardenburgh,* 41 id. 464; *Field* v. *Mason,* 47 id. 221; *Dodge* v. *Gardner,* 31 id. 239; *Kester* v. *Reynolds,* 6 Hun, 626; *Beachan* v. *Eckford,* 2 Sandf. Ch. 116; *Dwight* v. *G. L. Ins. Co.* 103 N. Y. 341; 6 Hun, 477; 69 N. Y. 113; 65 id. 111; *Woolsey* v. *Funke,* 121 id. 93; *Nicoll* v. *Sands,* 131 id. 19–24.)

*A. J. Cherritree* for respondent.

O'BRIEN, J. The plaintiff is the assignee of a contract made by his assignor, one Knapp, on the 9th of March, 1881, with a firm of which the defendant is the surviving member. The original parties to the contract each owned a patented device or improvement to be used in the manufacture of buckboard wagons. It was claimed that one of the devices was an infringement upon the other, which claim resulted in litigation between them, which was settled by the execution of the contract. This settlement and agreement combined both patents and their use in the defendant and his partner, they stipulating to pay to the plaintiff's assignor certain specified sums as royalties for the use of the patent, which had been granted to him and which he owned. The following are the material provisions of the contract:

"*First.* The said parties of the second part are hereby authorized to sell rights and territory under each of said patents, and they agree to use their best endeavors to do so with all convenient speed.

"*Second.* The parties of the second part are to pay all the expenses of traveling, selling, advertising and all other expenses connected with the granting of licenses or making sales under said patents or either of them, and pay over to said Knapp one-fourth of all sums received for such sales or licenses.

"*Third.* Upon all wagons made by the parties of the second part or by them and their associates, the said Knapp is to be paid by them $1.25 for each wagon made and sold. All payments to be made to said Knapp every three months.

"*Fourth.* The said parties of the second part shall have the exclusive right to manage said patents and grant licenses, and they are authorized to sign the name of said Knapp to deeds or licenses for that purpose.

"*Fifth.* This contract shall cover all improvements hereafter made to such wagons, no matter which party shall make the improvement."

This contract conferred upon the defendant's firm the right to use the patent of the other party and the use contemplated was thus classified:

1. The right to grant licenses to other individuals or firms to use the patent in their business and to license its use within particular territory. In such cases it was the interest of the licensor to make the best bargain that he could and to obtain as large a fee as possible, but whatever revenue was received from that source, one-fourth of the amount was to be paid to the patentee.

2. The defendant's firm were also manufacturers of this grade of wagons and desired to use the patent in their business, and they agreed to account and pay over to the patentee for this use of the improvement a fixed sum, namely, $1.25 for each wagon made and sold by them. The parties evidently supposed when the contract was made that this classification would cover every possible use to which the defendant's firm could apply the patent and every source from which revenue could be derived. But, some time after the execution of the contract, the defendant prepared some gears for the purpose of advertising the wagon to which the improvement covered by the patent was attached. The gear was composed of two slats or bands attached to four wooden cross-bars with boards, with side steel springs, and two other wooden bars detached from each other. From their use as a means of advertising the completed wagon they were gradually introduced into the trade as a separate article and in that form sold to dealers for about $9 each, while the completed wagon with the patent improvement was sold by the defendant on the market at prices ranging from $100 to $200 each, according to style and finish. Since June 1, 1891, the defendant's firm made and sold four hundred gears, and the question in this case is whether they are to be treated as wagons upon which the plaintiff is to be paid $1.25 each or as embraced within the other provision of the contract. The learned trial judge held that the manufacture and sale of such gears by the defendant was a proper and reasonable exercise of the power conferred by the contract to grant rights and licenses for the use of the patent in combination with parts of a wagon and the plaintiff was entitled to receive one-fourth of the sum actually received

by the defendant for the right to use the patent in that way. This amount he determined by ascertaining the cost of the material and labor in the construction of the article and adding to the same a reasonable trade profit and deducting such sum from the price for which the gear sold in the market. In this way the value of the use of the patent was found to be one dollar on each gear, one-fourth of which he awarded to the plaintiff, who insists that he was entitled to have the gear counted as a wagon and royalties paid in the same way as if they had all been used upon completed wagons made and sold. For all completed wagons made and sold and all territorial or other licenses granted to the defendant he has fully accounted and paid the plaintiff or his assignor, according to the terms of the contract, and thus the controversy is reduced to a comparatively small sum, the amount of which must depend upon the construction which should be given to. the contract, keeping in view the terms which the parties employed to express their meaning, and all the surrounding circumstances. We think it is quite plain that it was not the intention of the parties that the same royalty should be paid for the use of the patented improvement when used upon a completed wagon, selling at a price from $100 to $200, and a gear, selling at $9. Presumptively the royalty was fixed with some reference to the price which the article brought to which it was attached and became a part. The value of the improvement depended upon the extent that it would enhance the selling price of the article of which it formed a part, and it is quite plain that its use did not affect the value of the gear in the same way or in the same proportion that it did the value of a wagon. It enhanced the profit which the manufacturer made upon a wagon quite largely, while it did not have the same effect upon the profit realized from the sale of a gear. The licensee could not afford to pay the same price for the use of the invention upon a gear, selling for $9 and costing $8, as he could for its use upon a wagon selling for $200. He agreed to pay a fixed sum for the use when applied to a wagon, but a gear is not a wagon, it is only a part of a wagon. The contention of the

learned counsel for the plaintiff must, therefore, find support, if at all, outside the terms of the agreement to pay a specified sum on each wagon made and sold. Nor do we think that the parties ever intended by their agreement to permit the defendant to license himself to use the invention upon a gear as a single article for the trade, and so we are unable to adopt either the theory of the court below or that of the plaintiff's counsel. It is quite plain, we think, that the invention was applied to a purpose not covered by the terms of the contract and not within the contemplation of the parties when it was made. At 'that time its use for such purpose was unknown, but was developed subsequently, and both parties are now struggling to make the contract fit a state of things not thought of or in the minds of the parties when it was made. But while the use of the invention upon the gear was outside of the contract, it was not an infringement upon the rights of the patentee or the owner, since he consented to such use. The defendant's firm reported to him from time to time the number of gears upon which it was used, and they recognized their obligation to pay for such use, and the course of business was such as to leave no doubt about the fact that the plaintiff's assignor consented to the use of the invention in this way and expected the defendant to pay him for it. The only point upon which they differed, or rather upon which their minds never met, was the measure of compensation, and that was never settled, one party claiming that it was governed by the clause providing for a fixed sum upon a wagon, and the other that the case came within the clause providing for payment of one-fourth the license fees. The case then is one where the defendant's firm has used the patented invention with the consent and permission of the patentee, without any express agreement as to the royalty or compensation to be paid to him for such use, and, hence, the plaintiff was entitled to recover the reasonable value of such use whatever it is. We will not now attempt to ascertain whether such value is more or less than the amount awarded him by the judgment nor to point out the method by which it is to be determined.

In our view the learned court below in measuring the damages applied an erroneous principle, since it was held that the case came within that part of the contract which secured to the owner of the patent one-fourth of the license fees which the defendant received or became entitled to for territorial or individual licenses. The construction of the contract that we have adopted is perfectly just to both parties. The plaintiff, or the owner of the patent, is at liberty to terminate the present arrangement which has grown up from the course of business, and by notice or otherwise withdraw his consent to any further use of the invention upon gears, as a single article for the trade. If after the consent, express or implied, by the patentee to the use of the invention in this way has been withdrawn or terminated, the defendant should still continue such use, he would be liable as for an infringement or an unauthorized use of the invention. It is still open to both parties, if they so desire, to amend the contract or make a new one in such terms as to expressly authorize the use of the patent for the purposes in which the present controversy originated, upon such terms and conditions as they may be able to agree upon.

The judgment must, therefore, be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.  _____